LAW OFFICE OF STEPHEN J. GOLDBERG, SB#74473
623 Levering Ave.
Los Angeles, California 90024
Telephone: (310) 824-2447
Facsimile: (310) 209-1603
Email: Golds711@aol.com

Attorney for Defendants Erick Geisler & GS Entertainment, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL WILLIAMSON, and DWIGHT LAY, individually and on behalf of all others similarly situated, Plaintiffs, <br><br> vs. <br><br> ERICK GEISLER, GS ENTERTAINMENT, LLC, a California Limited Liability Company, MUSE PRODUCTIONS, INC., a California Corporation, and NICK CASSAVETES, Defendants. | Case No. CV-12-8056-DSF (JCx) <br><br> **DEFENDANTS ERICK GEISLER AND GS ENTERTAINMENT, LLC'S OPPOSITION TO MOTION FOR CERTIFICATION OF A CLASS ACTION** <br><br> No Hearing Scheduled <br><br> Complaint Filed: 9/18/12 |

Defendants Erick Geisler and GS Entertainment, LLC ("Defendants"), by and through its undersigned counsel, submits the following Opposition to Plaintiffs' Motion for Certification of Class.

## I.   INTRODUCTION

This action concerns an independent small budget film production entitled "Yellow" ("Picture") written and directed by defendant Nick Cassavetes who hails

DEFENDANT ERICK GEISLER AND GS ENTERTAINMENT, LLC'S OPPOSITION TO MOTION FOR CERTIFICATION OF A CLASS ACTION

from a renown family in the film business (his father was John Cassavetes) and who directed the profitable major studio film, "The Notebook". The first phase of the production was a five day film shoot in Los Angeles during September, 2010 (under the working title "Proud Mary").  After a gap of several months the Picture resumed shooting in the State of Oklahoma for more than five weeks in the summer of 2011 to take advantage of tax credits in that state.  The same director and principal cast participated in both the Los Angeles and Oklahoma film shoots. Virtually the entirety of the Los Angeles film footage was incorporated in the final Picture which was screened at the Toronto Film Festival in 2012 (where it was not well received by critics), but has not been released to date. (July 15, 2013 Declaration of Erick Geilser, Para. 2)

The Los Angeles film shoot used both union (Teamsters, IATSE, SAG) and non-union crew.  There were employees and independent contractors used in the L.A. shoot. Virtually everyone was paid a different wage and performed a variety of tasks from grip to hairdresser.  Yellow Productions, LLC, Muse Productions, and Nick Cassavetes produced the Picture. (July 15, 2013 Declaration of Erick Geisler, Para. 3).

A man known as Joe Bretz (whose real identity is unknown) promised to provide seed money to get the Picture started for the Los Angeles shoot. By the first day of shooting, with only a fraction of the promised funding for the Picture actually provided by Bretz, he disappeared.  As a result of Bretz's disappearance most of the cast and crew were not paid immediately for the Los Angeles shoot.[1] (July 15, 2013 Delcaration of Erick Geisler, Para 4).

Defendant Erick Geisler, who controls GS Entertainment, LLC, is a young man who had no film producing experience (he previously worked in the special

[1] Bretz was a named Defendant in the related case, King v. Geisler, et al., Los Angeles Superior Court BC450727, but was dismissed after Plaintiff's process servers could not locate him.
DEFENDANT ERICK GEISLER AND GS ENTERTAINMENT, LLC'S OPPOSITION TO MOTION FOR CERTIFICATION OF A CLASS ACTION

effects field) and who was taken advantage of by unscrupulous individuals who used him as a front. Geisler was promised he would be a producer on the Picture, if he used GS Entertainment, LLC to hire the L.A. cast and crew.  Later he was denied any credit on the Picture by Yellow Productions, LLC which controls the Picture. (July 15, 2013 Declaration of Erick Geisler, Para. 5)

In January and February 2011, GS Entertainment entered into settlement agreements with the Teamsters and IATSE unions regarding late wages. By December, 2010 and January, 2011 the vast majority of individual Los Angeles cast and crew members were paid in full with respect to any and all claims not covered by the union settlement agreements (i.e. waiting penalties, etc). (July 15, 2013, Declaration of Erick Geisler, Para. 6)

In 2011 the vast majority of cast and crew from the Los Angeles shoot signed releases of liability as to GS Entertainment, LLC (July 15, 2013 Declaration of Erick Geisler, Para. 7).

## II.    RELATED CASE

In December, 2010, Plaintiff's counsel filed a related class action lawsuit in State court on behalf of one plaintiff, and a putative class, _Denis King v. GS Entertainment, Eric Geisler, Joe Bretz, Nick Cassavetes, Muse Productions, Chris Hanley, Jordan Gertner and Does 1 through100_ (LASC 450729),  later reclassified as Case No. 12K13691 (Limited jurisdiction).

In that action, GS Entertainment was sued for wage penalties, and Muse Productions, Joe Bretz, and Nick Cassavetes were sued for FLSA violations as joint employers.

In State court, Plaintiff King moved to certify a class based on alternative theories of Section 16(b) of the Fair Labor Standards Act relating to a "collective action", Section 362 of the California Code of Civil Procedure relating to a "class action", and Section 2698 of the California Labor Code relating to a "private

DEFENDANT ERICK GEISLER AND GS ENTERTAINMENT, LLC'S OPPOSITION TO MOTION FOR CERTIFICATION OF A CLASS ACTION

attorney general action ("PAGA").

After reviewing over one hundred pages of argument, authority and evidence presented by Plaintiff in support of the motion (**including the Declarations of Williamson and Lay, Plaintiffs in the instant action**), the Los Angeles Superior Court judge *denied* certification of a collective action, finding:

"Matter is a purported class action and collective action for failure to properly pay wages. Many of the plaintiffs have already been paid and signed releases of all claims. Most crew members belong to unions and the unions as well have signed releases. Union members have arbitration agreements in their contracts. The motion to certify as a collective action is DENIED for lack of numerosity, mootness, lack of standing and not similarly situated." (Declaration of Stephen J. Goldberg, February 2, 2012, L.A.S.C. Order).

Thereafter, defendants Muse Productions, Inc. Chris Hanley and Jordan Gertner (of Muse) moved the superior court for an order transferring the case to limited jurisdiction (less than $25,000) for trial of King's claim to a waiting penalty for one (1) day's wages. Once again, Plaintiff filed over a hundred pages of argument and authorities in opposition. In response, the Superior Court ruled:

"Jurisdictional limit of $25,000 is unattainable. *Walker v. Superior Court* (1991) 53 Cal.3d 257. This matter is ordered reclassified as a limited jurisdictional matter and is to remain in the Los Angeles Judicial District." (Declaration of Stephen Goldberg, June 20, 2012, L.A.S.C. Order)

Trial of King's one day of work (for which he was paid $305.00) and wage penalty is scheduled for July 18, 2013, in the Limited Department, Los Angeles Superior Court.

**The astonishing fact remains that in the two and one half years since the state court action was filed, Plaintiff's counsel has not been able to add a**

DEFENDANT ERICK GEISLER AND GS ENTERTAINMENT, LLC'S OPPOSITION TO MOTION FOR CERTIFICATION OF A CLASS ACTION

4

single additional plaintiff other than original Plaintiffs King, Williamson, and Lay to either the state court or the federal court actions, yet the Plaintiffs seek class certification.

## III.   FEDERAL COMPLAINT

On September 22, 2012, presumably in response to the State Court denying class certification and transferring his action to limited jurisdiction court, Plaintiff's counsel filed the instant lawsuit, utilizing the identical complaint he filed in State court (literally word for word), on behalf of two different crew members.

On April 16, 2013, Plaintiff's counsel filed the instant motion for certification, utilizing the same motion to certify and supporting evidence that he filed in State court, minus only the arguments that state law certification under Section 362 and PAGA apply.

The legal and factual issues of class certification for the members of the Picture's cast and crew have already been litigated in State court. Plaintiff's counsel seeks a second bite of the apple in federal court. This is a case strictly generated by a law firm, not by a class of individual plaintiffs.

## IV.   RIPENESS

The Motion is premature. This case is not yet at issue. Plaintiff counsel's has stated in his Rule 26 Report that he intends to file an amended Complaint naming additional parties as plaintiffs and defendants (Yellow Productions, LLC and Mediate, LLC as defendants). (*See* Rule 26 Joint Report). Months later no additional parties have been added.

This action was filed over nine (11) months ago. No discovery whatsoever has taken place, yet Plaintiffs seek an order certifying a class against parties that have not yet appeared, as well as parties that have not yet been named, served or provided an opportunity to respond. (*See* Docket and Rule 26 Joint Report).

The Plaintiffs' total lack of discovery in this action means that they have

DEFENDANT ERICK GEISLER AND GS ENTERTAINMENT, LLC'S OPPOSITION TO MOTION FOR CERTIFICATION OF A CLASS ACTION

1  presented no evidence supporting their motion for certification other than the

2  declarations of the Plaintiffs, the declaration of Defendant Geisler in the state court

3  action, and irrelevant excerpts from Geisler's deposition in the state court action.

4  **V.      MOOTNESS AND LACK OF STANDING**

5      Plaintiffs were paid their wages in December, 2010 well before this action

6  was filed in September, 2012 (See Declarations of Plaintiffs Williamson and Lay).

7      "Class actions must satisfy normal Article III case or controversy

8  requirements, including the requirement that the issues to be decided have not

9  become moot.  So if a would-be class representative's individual claim becomes

10  moot before he or she moves for certification, the action may be dismissed

11  [*Holmes v. Pension Plan of Bethlehem Steel Corp.* (3rd Cir. 2000) 213 F3d 124,

12  135-136; see *Comer v. Cisneros* (2d Cir. 1994) 37 F3d 775, 798; *Grant ex rel.*

13  *Family Eldercare v. Gilbert* (5Th Cir. 2003) 324 F3d 383, 389]" (Rutter, FCP,

14  Section 10:352).

15      In this action the named Plaintiffs were paid in full for their work years

16  before the action was commenced.  In fact, all, but a handful of crewmembers from

17  the brief Los Angeles film shoot have been paid in full.  There are very few

18  potential class members who have not been paid. (July 15, 2013 Declaration of

19  Erick Geisler).

20      If the named plaintiff's claim becomes moot before the class is certified, the

21  suit must be dismissed because no one besides the plaintiff has a legally protected

22  interest in the litigation.  *Board of School Commissioners v. Jacobs,* 420 U.S. 128,

23  95 S.Ct. 848, 43 L.Ed.2d 74 (1975) (per curiam); *Bertrand ex rel. Bertrand v.*

24  *Maram*, 495 F.3d 452, 456 (7th Cir. 2007).

25      This action is distinguishable from a line of cases which hold that simply

26  paying off the individual claim(s) of the lead plaintiff(s) pre-certification will not

27  defeat class certification (*e.g. Griffith v. Bowen,* 678 F.Supp. 942 (D. Mass. 1988).

28  DEFENDANT ERICK GEISLER AND GS ENTERTAINMENT, LLC'S OPPOSITION TO
MOTION FOR CERTIFICATION OF A CLASS ACTION

In this action Plaintiffs were paid their full wages and benefits years before the complaint was even filed. In fact, virtually the entire potential class of cast and crewmembers has been paid their wages and benefits pre-certification. Therefore, this action is moot which creates a lack of standing that cannot be cured by adding potential substitute class members.

## VI.   CLASS CERTIFICATION RULE 23 (a)

Under Rule 23(a), the party seeking certification must demonstrate, first, that: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class" Plaintiff seeks certification under F.R.C.P. 23. (Rule 23(a))

### 1.   <u>Numerosity</u>

Plaintiffs Williamson and Lay both estimated in their declarations that there were between forty (40) (Williamson) and fifty (50) (Lay) total members of the cast and crew participating in the Los Angeles film shoot. (Declarations of Plaintiffs Michael Williamson, Para. 12 and Dwight Lay, Para.12)

For purposes of evaluating "numerosity," while no exact numerical cut-off can be stated, the class must be so numerous that joinder of all members individually is impracticable. *General Telephone Co. v. E.E.O.C.* 446 U.S. 318 (1980) (finding fifteen or fewer persons too small for certification).

A significant majority of the cast and crew members have signed releases. Accordingly, the *actual* number of putative class members is small, perhaps no more than ten, and geographically centralized. (*See*, e.g. *Slakey Bros. Sacramento, Inc. v. Parker* 265 Cal.App.2d 204 (1968) (finding the twenty-six (26) potential class members was too small to warrant certification)).

The Los Angeles superior court judge has already determined the identical putative class that Plaintiffs seek to certify lacked numerosity. (Declaration of Stephen J. Goldberg, February 2, 2012 Los Angeles Superior Court Order).

In two and one half years since the state court action was filed, Plaintiffs' counsel has only been able to identify and represent three members of the putative class whose collective wages were $1,300.00.

2.     **Common Questions of Law and Fact**

Common questions of law and fact do not exist among the Los Angeles cast and crew members.

The putative class is divided between union and non-union members. The union members are bound to arbitration agreements. The majority of putative class members (union and non-union) have signed releases. Therefore, very different questions of law and fact apply to various members of the putative class.

In addition, the terms and conditions of every crew member's employment differ with respect to when each crew member worked, for how long each crew member worked, where each crew member provided services, to whom each crew member provided services and/or reported to, the amount of pay each crew member was entitled to, the amount of overtime (if any) each crew member was entitled to, when each crew member got paid, by whom each crew member was paid, etc..

The defenses to each crew member's claims will be equally disparate. In order to determine each crew member's wage claims in a class action, it will require trial of each crew member's wage claim.

Where relief turns on individual circumstances, class action treatment may be denied. *Stott v. Haworth*, 916 F2d 134, 145 (4th Cir. 1990). In *Fraga v. Smith*, 607 F.Supp.517, 522 (D Or 1985) the INS delayed processing applications for certificates of citizenship. Class treatment was inappropriate because relief

DEFENDANT ERICK GEISLER AND GS ENTERTAINMENT, LLC'S OPPOSITION TO MOTION FOR CERTIFICATION OF A CLASS ACTION

8

depended on the facts of each individual application.

Therefore, this matter does not present common questions of law and fact suitable for class certification.

3. **Typicality**

Plaintiff's claims and the defense thereto are not typical of the putative class. Plaintiffs have not signed individual releases (as have a majority of the crewmembers) and are furthermore bound by the releases signed by their union (IATSE). Plaintiff's claims are not typical of other putative class members that have signed individual releases (union and non-union) or putative members that are not bound by union arbitration agreements.

Plaintiff's claims are not even typical of each other. According to their declarations, they provided different services, on different days, for different pay, under different terms and conditions and are each subject to different defenses. (*See* Declarations of Plaintiffs Michael Williamson and Dwight Lay).

In this matter there are disparate groups of cast and crewmembers. Both of these Plaintiff electricians are members of the IATSE Union which settled its claims to wage violations collectively with the GS Entertainment, LLC. There are other unions representing the crewmembers such as the Teamsters which settled their claims with GS. In addition, the union contracts with crewmembers include an arbitration clause governing disputes, whereas the non-union members do not have such provisions covering their employment on the L.A. film shoot.

Where a representative's claims may be typical of *some* of the proposed class members but *atypical* of other of the proposed class members, courts have declined to certify. *Bishop v. Petro-Chem. Trans., LLC*, 582 F.Supp.2d 1290, 1308 (E.D. Cal. 2008) (*See also Sarviss v. General Dynamics Information Technology*, 663 F.Supp.2d 883, 910 (CD Cal. 2009) denying class certification in a wage and hour action where the Plaintiffs provided no evidence that pay stubs and payroll

DEFENDANT ERICK GEISLER AND GS ENTERTAINMENT, LLC'S OPPOSITION TO MOTION FOR CERTIFICATION OF A CLASS ACTION

systems were the same across the putative class).

The second indicia of lack of typicality of any potential class is the fact that virtually every crewmember was paid different hourly wages and benefits because the film crewmembers on this shoot (as in most film shoots), included a wide variety of skill sets including production assistants, camera operators, grips, sound techs, hair and makeup artists, stuntmen, wardrobe handlers, set decorators, prop handlers, grips, transportation drivers, etc. Their hourly pay ranged from minimum wage to seventy-five dollars per hour.

Therefore, the claims of the Plaintiffs are not typical of the crewmembers as a whole. Safety and fire units were non-union and others such as Plaintiffs were covered by IATSE, other crewmembers were covered by the Teamsters Union with different rules. Cast members were governed by Screen Actors Guild. Union members were covered by arbitration clauses. Many crewmembers were non-union altogether.

In *Lusardi v. Xerox Corp.,* 118 F.R.D. 351 (D.N.J. 1987) the court decertified a conditional class of plaintiffs in an age-discrimination action based on circumstantial statistical evidence of disparate treatment, holding that members of the proposed class were not similarly situated:

> members of the proposed class came from different departments, groups, organizations, sub-organizations, units, and local offices, performed different jobs at different geographic locations, were subject to different jobs actions concerning reductions in the work force, which occurred at various times as a result of decisions by different supervisors made on a decentralized employee-by-employee basis.

A class action is inappropriate if, as here, "each individual's right to recovery depends on facts peculiar to that individual." *Kennedy v. Baxter Healthcare Corp.*, 43 Cal.App.4th 799, 809 (1996).

If the current action were certified, it would devolve into a series of

DEFENDANT ERICK GEISLER AND GS ENTERTAINMENT, LLC'S OPPOSITION TO MOTION FOR CERTIFICATION OF A CLASS ACTION

10

individualized mini-trials concerning the disparate classifications of both union and non-union crewmembers and their numerous disparate job categories and each individual's varying compensation rates, therefore confusing the jury.

Multiple significant liability issues will fracture any trial into many mini-trials. Such individualized resolution of any class claims would be unmanageable. *See City of San Jose v. Superior Court,* 12 Cal.3d 447, 459-63 (1974); *Keller v. Tuesday Morning, Inc.* 179 Cal.App.4[th] 1389, 1397 (2009).

### 4.   Adequate Representation

Plaintiffs do not adequately represent the putative class. They are members of a union that has settled its claims with Defendants and have brought a lawsuit on behalf of unnamed putative class members that have no right to bring an action in this court or who have released their claims. Accordingly, Plaintiffs are not adequate representatives of the putative class.

No class action may be certified where a putative class is literally made of competing interests. Plaintiffs seek to represent a putative class in an action when unnamed members of the putative class are barred from doing so under agreements to arbitrate. Plaintiffs also seek to represent a putative class in an action when most members of that class (union and non- union) have released their wage claims, while Plaintiffs have not.

Adequate representation cannot exist where a fundamental conflict exists within the class as to the specific issues in controversy. *Valley Drug Co. v. Generva Pharmaceuticals, Inc.* 350 F3d 1181, 1189 (11th Cir. 2003).

## VII.          RULE 23 (b)

In addition to demonstrating that this case meets the four requirements of Rule 23(a), Plaintiffs must demonstrate that it meets the requirements of FRCP Rule 23 (b) (3) which provides for certification when "the court finds that the questions of law or fact common to the members of the class predominate over any

DEFENDANT ERICK GEISLER AND GS ENTERTAINMENT, LLC'S OPPOSITION TO MOTION FOR CERTIFICATION OF A CLASS ACTION

11

questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

In the current action common questions of law or fact do not predominate over questions affecting individual putative class members.  Questions will arise as to whether individual members signed releases, whether members are union members or non-union, which union they belonged to, whether the union released it claims, whether individual union members are subject to arbitration clauses, what their job function was, what their pay rate was, their entitlement to overtime, if any, and wage penalties, if any.

Plaintiffs argue that the common issue is whether, in fact, the members of the putative class were paid late and then simple calculations can be made on each claim.

However as the court stated in *Sarviss*, *supra.*, in finding the alleged wage and hour violations of the putative class did not satisfy Rule 23 (b) (3):

> To the extent, for example, that Plaintiff claims the wages due and unpaid to him are overtime wages, an individual determination of whether there are in fact any wages owed might rest on whether Plaintiff is an exempt employee. Calling such issues simply damages calculations, Plaintiff appears to suggest that such issues are easily amenable to class treatment.  Although the Court does not doubt that the existence of simple calculations would not undermine certification, the Court views the potential issues, here (at least as Plaintiff has defined the class) as a different matter:  **because of the broad range of employees, the issues do not simply encompass calculation, but also entitlement.**  Accordingly, the Court is not convinced that common issues predominate. *Id.* at 912 [emphasis added].

The issues in the instant action do not reduce down to simple damage calculations.  Each cast and crewmember has a variety of entitlement determinations and issues to be decided which defeat the Plaintiffs' claims of predominance of common questions of law or fact.

**XIII.     CONCLUSION**

DEFENDANT ERICK GEISLER AND GS ENTERTAINMENT, LLC'S OPPOSITION TO MOTION FOR CERTIFICATION OF A CLASS ACTION

The Plaintiffs have not satisfied Rule 23 (a) and (b) for class certification of this divided union and non-union cast and crew where union members agreed to arbitrate their employment claims and non-union members did not. All members worked different job classifications, on different dates, for different wages, at different times, for different durations, under different terms of employment, and for which the unions have signed releases of liability and the majority of the putative class (union and non-union) have signed individual releases of liability.

Under these conditions the required numerosity, sufficiently common questions of law and fact, typicality, and adequacy of representation, and related considerations fail to make a class action procedure a superior means of relief than individual claims by the Plaintiffs.

In addition to the complete failure to satisfy the requirements of Rule 23(a) and (b), the motion should be denied on grounds of lack of ripeness, mootness and lack of standing.

Defendants respectfully request that the Plaintiffs' Motion be denied.

Dated: July 15, 2013           LAW OFFICE OF STEPHEN J. GOLDBERG

By: _____
Stephen J. Goldberg, Attorney for Defendants
Erick Geisler and GS Entertainment, LLC

DEFENDANT ERICK GEISLER AND GS ENTERTAINMENT, LLC'S OPPOSITION TO MOTION FOR CERTIFICATION OF A CLASS ACTION
13